IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

**William Howard Topp**                                      Case No. 20-01191-als12

      Debtor(s)

MEMORANDUM OF DECISION
(date entered on docket: September 16, 2021)

      Before the Court is an objection by Farm Credit Services to the interest rate proposed by the Debtor William Topp (hereinafter "Topp") in his chapter 12 plan. Hearing on this matter was conducted on June 22, 2021 and post-trial briefs have been submitted. Jurisdiction of this matter is conferred pursuant to 28 U.S.C. sections 157(b)(1) and 1334. For the reasons that follow the objection is overruled.

DISCUSSION

      Farm Credit Services' (hereinafter "Farm Credit") amended proof of claim reflects that it holds a debt in the amount of $595,538.53, which is secured by real estate valued at $1,447,000.[1] Topp's proposed plan repays this obligation over a term of 20 years with interest at 3%[2] and has Farm Credit retaining its lien. Farm Credit objects to the stated interest rate and suggests that 5.25% is appropriate.[3] Because Farm Credit does not accept its treatment the bankruptcy code requires that "the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. §1225(a)(5)(B)(ii). Accordingly, to confirm Topp's proposed plan Farm Credit must receive the "present value" of its secured claim. Central to the issue of determining the present value of the secured claim is applying the appropriate interest rate under the plan. *U.S. v. Doud,* 869 F.2d 1144 (8th Cir. 1989); *aff'g. In re Doud,* 74 B.R. 685 (1987); *Till v. SCS Credit Corp.,* 541 U.S. 465 (2004). Topp contends the *Doud* rate has consistently been used in this District and therefore applies here. *Doud*, 869 F.2d 1144. Farm Credit counters that

---

[1] Farm Credit's secured claim includes 5 separate notes (and amendments thereto) with interest rates ranging from 3.5% to 7.60% and various repayment periods ranging from 10 to 20 years.
[2] The court presumes that this calculation is based upon the 20-year bond rate on June 21, 2021 at 1.87% plus the 2% risk adjustment under *Doud* which is then adjusted downward to 3%.
[3] This interest rate is based upon the prime rate of 3.25% plus a 2% adjustment for risk.

the prime rate plus formula is controlling. *Till,* 541 U.S. 465. Each of these cases endorse a formula approach to calculate interest rates but use different metrics.

*Doud* involved cram down of a secured creditor's loan in a chapter 12 case where the treasury bond rate with a maturity date matching the term of repayment for the secured obligation was adopted as the riskless component of the discount rate. 869 F.2d at 1145. After weighing a number of factors, a 2% risk adjustment was identified to "adequately compensate[s] a conventional lender for the overall risk associated with a Chapter 12 reorganization." *Id.* at 1145. *Till* addressed the calculation of the interest rate to be applied to an undersecured vehicle loan in a chapter 13 plan. 541 U.S. 465. The plurality opinion adopted a formula approach utilizing the prime rate with no specific risk adjustment identified, and instead simply observed that "other courts have generally approved adjustments of 1% to 3%." *Id.* at 480.

Farm Credit argues that the *Till* case has "suspended" application of the *Doud* formula. While many courts have adopted *Till* in determining interest rates, there is no legal authority to suggest that the holding in *Doud* has been abrogated, or otherwise formally rejected. See generally, Dian Lourdes Dick, et al., *Revaluating Risk and Return in Chapter 11 Secured Creditor Cramdowns: Interest Rates and Beyond,* 93 AM. BANKR. L.J. 175 (2019). Although some courts do apply *Till* in both chapter 11 and 12 cases the use of that formula is not mandated.

> *Till* was a splintered decision whose precedential value is limited even in the Chapter 13 context. While many courts have chosen to apply the *Till* plurality's formula method under Chapter 11, they have done so because they were *persuaded* by the plurality's reasoning, not because they considered *Till* binding.[33] Ultimately, the plurality's suggestion that its analysis also governs in the Chapter 11 context—which would be dictum even in a majority opinion—is not "controlling . . . precedent."

*Wells Fargo Bank N.A. v. Tex. Grand. Prairie Hotel Realty, L.L.C. (In re Tex. Grand Prairie Hotel Realty, L.L.C.),* 710 F.3d 324, 331 (5th Cir. 2013) (citation omitted). Also noteworthy is the treasury rate analysis has been approved in a "modified" application of the *Till* formula. In affirming a decision issued by the bankruptcy court in Delaware the Second Circuit stated:

> Judge Drain chose the Treasury rate because it is "often used as a base rate for longer-term corporate debt such as the [R]eplacement [N]otes." In contrast, the prime rate may be a "more appropriate base rate for consumer, although [the Second Circuit in] *Valenti* chose the Treasury rate." The Court agrees with Judge Drain that *Till* does not obligate a bankruptcy court to choose the national prime rate as the risk-free base rate.

2

*U.S. Bank N.A. v. Wilmington Sav. Fund Soc'y (In re MPM Silicones, LLC)*, 531 B.R. 321, 334 (S.D.N.Y. 2015)*, rev'd sub nom., In re MPM Silicones,* 874 F.3d 787.

In some cases, such as here, where the secured claim involves a transaction that is usually financed over a longer period of time the treasury rate is relevant to the consideration of calculating present value. Black's Law Dictionary describes Treasury Bonds as a risk-free "long-term debt security issued by the federal government, with a maturity of 10 to 30 years." Black's Law Dictionary (11th ed. 2019). In contrast the prime-rate is "one of several base rates used by banks to price short-term business loans."[4]

Farm Credit relies upon testimony by its witness to establish the risks of repayment of its loan. Much of that evidence relates to state court proceedings involving the debtor which are unrelated to the farming operation. On cross-examination the witness did not clearly respond to whether such risk factors were routinely applied or monitored by Farm Credit. The record is unclear whether Topp was delinquent or in default on his loans on the petition date. In support of its proposed risk adjustment under *Till*, the testimony, in part, was described in the context of "pricing a loan." The use of such a characterization implies that this process is used when determining an interest rate for a new loan, a consideration that is not relevant in the calculation of present value on a secured claim.[5] Farm Credit raised no objection to feasibility of the proposed plan, which the court could construe as acknowledgment, at least tacitly, that Farm Credit's claim will be paid. *Doud*, 74 B.R. at 869 ("risk is reduced because a confirmed plan presumes repayment under the feasibility finding"); *In re Ridgewood Apartments*, 183 B.R. 784, 792 (Bankr. S.D. Ohio 1995) ("If a plan of reorganization is feasible, qualification of the 'borrower' is established"). Farm Credit alleges that the value of its collateral is not guaranteed and that real estate prices could decline over the course of the loan repayment. No data or testimony was supplied to quantify such a risk. The real estate securing the claim is worth substantially more than what is owed with a loan to value ratio in excess of 1:2. Although application of a ratio has been abandoned in Farm Credit's current review process in extending credit, it is a relevant factor to consider in this dispute.

---

[4] *In re Sparks*, 346 B.R. 767, 772 (Bankr. S.D. Ohio 2006) ([T]he prime rate published daily in the *Wall Street Journal* or the bank prime loan rate published daily by the Federal Reserve at www.federalreserve.gov/releases/H15 meet the requirements of the Supreme Court to start with the "national prime rate" in calculating the rate of interest due to creditors").

[5] See generally, *In re Key Farms, Inc.*, 2020 WL 3445425 (Bankr. E.D. Wash. 2020) (unpublished), citing, *Till* 541 U.S. at 477-78.

*Doud* evaluated many of the concerns expressed by Farm Credit:

> ...Chapter 12 reorganizations have aspects that heighten risk. Arguably the greatest source of risk is the unpredictable nature of the agricultural economy itself. Though a plan must meet the feasibility requirements of 11 U.S.C. section 1225(a)(6), the court is keenly aware that the assumptions contained in the plan and otherwise found reasonable at the time of confirmation are subject to the vicissitudes of the farm economy. Prices relied upon in February may not be the prices paid in November. Yields anticipated in the spring may not be the yields harvested in the fall. The numerous variables affecting commodity prices—the value of the dollar, the weather, foreign production, interest rates, government policy—make predictions challenging for even the most enlightened.

*Doud*, 74 B.R. at 869. Based upon these considerations the *Doud* bankruptcy court concluded that a 2% risk adjustment is appropriate. The same percentage requested by Farm Credit.

Farm Credit holds notes and mortgages against real estate and these types of transactions are generally financed over a longer period of time which justifies use of the treasury bond as the base rate. The fact that the treasury bond rate is lower than the prime rate, standing alone, does not support a rejection of the *Doud* formula.

The available data suggests that in the month of September 2021 a treasury bond with a maturity rate of 20 years is within the range of 1.88% which Topp uses in his plan.[6] Applying *Doud's* risk adjustment of 2% yields an interest rate of 3.88% which is properly rounded to 4%.

**IT THEREFORE ORDERED that:**

1. Farm Credit's objection to the plan is overruled.
2. The interest rate to be applied to Farm Credit's secured claim is 4%.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case

---

[6] https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yield (last visited Sep. 13, 2021).